UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD GOLDEN and BEAK & BUMPER, LLC<br><br>Petitioners,<br><br>v.<br><br>JANG H. LIM d/b/a DENTAL USA, INC.<br><br>Respondent. | Case No.  2:15-cv-10795<br>Honorable Laurie J. Michelson<br>Magistrate Judge Mona K. Majzoub |

## OPINION AND ORDER CONFIRMING ARBITRAL AWARD

The Court of Appeals has recognized that "[w]hen a party comes to [them] with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortgage Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012). The essence of this principle more than applies here. Respondent Jang Lim asks this Court to vacate an arbitration award for nineteen reasons and this Court's ability to vacate such an award is considerably more limited than the Court of Appeals' ability to reverse a district court ruling. *See Michigan Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 438 F.3d 653, 659 (6th Cir. 2006) (Sutton, J., concurring) ("Plain error, clear error, abuse of discretion, *Chevron* deference, AEDPA deference, substantial evidence and reasonableness all would seem to have more teeth than federal-court review of arbitration awards."). Lim fails to acknowledge that when, as here, a court is asked to confirm (or vacate) an arbitration award, it does not sit to correct legal or factual errors in that award. Primarily for this reason, the Court will deny Lim's motions to vacate or modify the arbitration award and instead grant Petitioners Dr. Richard Golden and Beak & Bumper, LLC's request to confirm.

**I.**

**A.**

This suit has its genesis years back. In 2005, Petitioner Dr. Richard Golden, a dentist, was issued United States Patent No. 6,910,890. This patent, in essence, covers methods for extracting teeth through rotation. Pictures help with understanding claim 1 of the '890 patent:



('890 patent Figs. 4, 5.) Using the method of claim 1, a dentist does not simply grasp the tooth with pliers and pull up on the tooth to remove it from the gum; instead, a dentist leverages the tooth from the gum by rotating the dental pliers around a fulcrum. The parties refer to the end of the dental pliers that grasps the tooth as the "beak" (labeled 24 in the pictures) and the end of the pliers that creates a pivot point as the "bumper" (labeled 40).

In addition to the '890 patent, in 2008 and 2009, Golden was issued a number of design patents giving him exclusive rights to make beak-and-bumper pliers taking a particular form. *See* U.S. Patent Nos. D566,840, D567,376, D561,899, D590,947.

By way of assignment from Golden, Petitioner Beak & Bumper, LLC, now owns these patents. Non-party End Products Results, the exclusive licensee of the '890 patent, makes "Physics Forceps," pliers that allows dentists to practice the patented methods.

2

**B.**

In September 2009, Golden sued Lim for patent infringement in the Eastern District of Michigan. *See Golden v. Lim*, No. 09-13561 (E.D. Mich. filed Sept. 9, 2009). In December 2009, Golden and Lim executed a "Settlement Agreement" resolving their dispute. (Dkt. 1, Ex. A, Settlement Agreement.) Because that agreement is central to the validity of the Arbitrator's award, the Court summarizes it in some detail.

The Settlement Agreement was, in some respects, a manufacturing agreement. In particular, Lim agreed to manufacture 500 sets of four dental pliers for Golden "in accordance with specifications provided by Golden and meeting quality standards dictated by Golden." (Settlement Agreement ¶ 2.) In exchange, Golden agreed to pay Lim $180 per set of pliers "acceptable by Golden." (*Id.* ¶ 3.) The Settlement Agreement also provided that of the $90,000 Golden was to pay Lim for the 500 sets of pliers, $29,000 would be deducted due to deposits that Golden had already given Lim and Lim's manufacturer. (*Id.* ¶ 3.)

Because the parties were settling a patent infringement lawsuit, the Settlement Agreement also addressed Golden's claim of infringement. In particular, it stated, "Infringement. Lim agrees not to infringe the GOLDEN PATENTS in the future," with "GOLDEN PATENTS" referring to the '890 and design patents. (Settlement Agreement ¶ 7.) Relatedly, the agreement prohibited Lim from selling "Golden pliers" unless the sales were "placed through and fulfilled by Golden." (*Id.* ¶ 4.) Lim also acknowledged the validity of the Golden Patents. (*Id.* ¶ 6.)

Three other provisions of the Settlement Agreement are key to understanding the Arbitrator's award. One: "A material breach of this Agreement by Lim which is not cured in accordance with paragraph 10 of this Agreement shall result in liquidated damages of $10,000.00 payable immediately by Lim to Golden." (Settlement Agreement ¶ 5.) Two: "This Agreement

shall be binding not only on Golden and Lim, but also on any and all businesses controlled by Lim or Golden specifically including, but not limited to Dental USA, Inc." (*Id.* ¶ 8.) Three: "Any and all disputes regarding this Agreement between Lim and Golden shall be resolved by binding arbitration before the American Arbitration Association." (*Id.* ¶ 11.)

### C.

In December 2011, Golden invoked the arbitration clause of the Settlement Agreement by filing a demand for arbitration with the American Arbitration Association. Golden alleged that Lim had made, sold, or used "dental pliers which infringe[d] one or more of the Golden Patents." (Dkt. 48, Consolidated Mot. to Affirm Ex. 2, Demand for Arbitration ¶ 9.) As relief, Golden sought $10,000 in liquidated damages, a permanent injunction against infringement, and "other and further relief as is just and appropriate." (Demand for Arbitration at 4.)

Almost a year later, in September 2012, Golden moved to amend his statement of claim. Golden explained that in 2009, when he and Lim executed the Settlement Agreement, he did not contemplate that, in 2011, Lim would produce an infringing product known as the Power Elevators. (Dkt. 49, Consolidated Mot. to Vacate Ex. E, Mot. to Amend Stmt. of Claim ¶ 3.) Thus, Golden argued, although the Settlement Agreement contained a $10,000 liquidated damages clause, "$10,000 as liquidated damages in this patent infringement case is unreasonable and clearly out of proportion to the total amount involved." (*Id.* ¶ 6.)

The Arbitrator, Barbara Mandell, largely agreed. Although not finally ruling on the issue, she interpreted case law from Michigan and the Federal Circuit as supporting Golden's position. (Arbitration Hr'g Tr. at 881–87.) She thus permitted Golden to amend his claim. (*Id.* at 888.) Golden did so and sought, among other things, lost profits, a reasonable royalty, and damages for willful infringement. (*See* Consolidated Mot. to Confirm Ex. 3, 2d Am. Stmt. of Claim at 11.)

4

2:15-cv-10795-LJM-MKM   Doc # 53   Filed 02/10/16   Pg 5 of 37   Pg ID 7755

During the arbitration, the parties engaged in discovery and filed motions. The Arbitrator issued a number of pre-hearing orders (no less than 13) and issued a claim-construction opinion. (*See* Dkt. 48, Consolidated Mot. to Confirm Exs. 8, 17, 38, 29, 30.) And she conducted a hearing for 10 days in September, October, and November 2014. (Dkt. 52, Arbitration Hr'g Tr.) Following the hearing, the parties submitted post-hearing briefs further setting forth their positions. (*See* Consolidated Mot. to Vacate Exs. 11, 20, 21, 32.)

### D.

On February 26, 2015, the Arbitrator issued a "Partial Final Award." (Dkt. 1, Pet. to Confirm Ex. C, Partial Final Award.) The award was partial because the Arbitrator required additional briefing to determine the amount of attorney's fees to award Petitioners. (*See* Partial Award ¶¶ 197–99.)

On May 8, 2015, the Arbitrator issued her "Final Award," which is identical to the Partial Final Award save for a few paragraphs relating to attorney's fees. (*See* Dkt. 49, Consolidated Mot. to Vacate Ex. I, Final Award.) What follows are brief summaries of the Arbitrator's findings of fact and conclusions of law as set forth in her 70-page Final Award.

### 1.

In late 2006, Randy Pardy, acting on behalf of the "Golden Organization,"[1] approached Lim about manufacturing "Physics Forceps." (Final Award FOF ¶ 32.) (Physics Forceps are beak-and-fulcrum-type pliers that allow dentists to perform the method of the '890 patent.) Soon

---

[1] The Arbitrator used the term "Golden Organization" to refer to Dr. Golden and four entities that Golden partly owned, operated, or was otherwise involved with: the Richard M. Golden Family LLC, the Richard M. Golden Irrevocable Children's Trust, Beak & Bumper, LLC, and End Products Results, LLC. (Consolidated Mot. to Vacate Ex. I, Final Award ¶¶ 8.) Lim takes issue with the Arbitrator's failure to honor corporate formalities by grouping these entities together for purposes of her award. The Court addresses that complaint below.

thereafter, Lim produced a first batch of Physics Forceps, but those proved unacceptable to the Golden Organization. (*Id.* ¶ 41.)

In December 2009, Lim delivered 230 of the 500 sets of Physics Forceps referenced in the Settlement Agreement. (*Id.* ¶ 48.) After testing these pliers, the Golden Organization again concluded that they were unmarketable. (*Id.* ¶ 50.)

In July 2011, the Golden Organization ordered a third batch of Physics Forceps from Lim, but these too had problems. (*Id.* ¶¶ 55–56.) Lim suggested that the Golden Organization sell the defective Physics Forceps, but the Golden Organization declined: "our customers expect high quality instruments for the costs and I know for a fact that they will call us if we sell instruments like you provided." (*Id.* ¶ 59.)

In the first half of 2011, the Golden Organization learned that Lim had been selling the Physics Forceps that had been rejected as defective. (Final Award FOF ¶ 70.) In particular, Pardy, who had left the Golden Organization, had purchased the rejected Physics Forceps from Lim and then sold those rejects to dentists. (*Id.* ¶¶ 71–75.)

In 2011, Lim began selling dental pliers called "Power Elevators." (Final Award FOF ¶ 101.) It appears that the design of these pliers was based on a prototype called the "Reverse" that Pardy had stolen from the Golden Organization and provided to Lim. (*See id.* ¶¶ 79, 82, 85, 91.) With each sale of Power Elevators, Lim included an instructional video showing dentists how to use the forceps. (*Id.* ¶ 110.) (In fact, Lim and Pardy hired the same dentist for their instructional video that the Golden Organization had hired for theirs. (*Id.* ¶ 111.))

At a trade show in February 2012, Jackie Golden witnessed Lim holding Power Elevators and stating that they were the new Physics Forceps. (*Id.* ¶ 142.) She also saw Lim selling Power Elevators while using Physics Forceps brochures to illustrate their use. (*Id.* ¶ 140.)

6

**2.**

Based on the foregoing facts (and others), the Arbitrator found that Lim breached paragraph 2 of the Settlement Agreement—the provision requiring him to manufacture 500 sets of pliers for Golden—by "fail[ing] to produce acceptable instruments in each of the two batches he sent to Claimants." (Final Award COL ¶ 11.) For this breach, the Arbitrator applied the liquidated damages clause and awarded Golden and Beak & Bumper $10,000. (*Id.* ¶ 92.) But she also awarded Petitioners $29,000 for the deposits that Golden had given Lim to make the pliers. (*Id.* ¶¶ 90–91.)

The Arbitrator also found that Lim breached the Settlement Agreement by selling Physics Forceps without going through Golden. (Final Award COL ¶¶ 14–25.) In particular, she concluded, "Mr. Lim's sales to Mr. Pardy, possibly Dr. Sheehan, Diamond Misch and to consumers each constitute a separate breach of Paragraph 4 of the Settlement Agreement." (*Id.* ¶ 26.) For these breaches, the Arbitrator applied the $10,000 liquidated damages clause three times to award Golden and Beak & Bumper $30,000. (*Id.* ¶ 93.)

The Arbitrator additionally found that Lim breached paragraph 11 of the Settlement Agreement—the provision requiring Golden and Lim to arbitrate "[a]ny and all disputes regarding" the Settlement Agreement. (Final Award COL ¶ 27–36.) During the arbitration, Lim's company, Dental USA, filed two suits against Beak & Bumper and End Product Results, LLC (companies that the Arbitrator placed under the "Golden Organization" umbrella). *Dental USA, Inc. v. Beak and Bumper, LLC et al.*, No. 1:13-cv-02149 (N.D. Ill. filed March 20, 2013); *Dental USA, Inc. v. Beak & Bumper, LLC et al.*, No. 1:13-cv-02581 (N.D. Ill. filed April 5, 2013). One suit sought to invalidate the '890 patent, the other the design patents. The Arbitrator concluded that each of the lawsuits "were a breach of paragraph 11 of the Settlement Agreement, entitling

Claimants to a refund of their local counsel and lead counsel's fees and costs incurred in defending and obtaining a dismissal of each of those lawsuits." (*Id.* ¶ 36.) That amount, determined the Arbitrator, was $8,414. (Final Award at 68.)

Although not explicitly referencing paragraph 7 of the Settlement Agreement, the Arbitrator also found that Lim was liable for indirectly infringing the '890 patent. She first found that the evidence supported an inference that dentists who had purchased Power Elevators had directly infringed the '890 patent. (Final Award COL ¶¶ 38–49.) In reaching this conclusion, the Arbitrator relied on Petitioners' expert, Dr. Timothy Kosinski, who testified that the instructional videos that Lim included with the Power Elevators taught dentists how to perform the method claimed by the '890 patent. (Final Award COL ¶ 44; *see also* Arbitration Hr'g Tr. at 410.)

The Arbitrator then proceeded to find that Lim indirectly infringed the '890 patent in two ways. She concluded that Lim induced the dentists to infringe by distributing the instructional videos despite knowing that, if the dentists used the Power Elevators in the manner taught by the videos, they would perform the steps of claim 1 of the '890 patent. (*See* Final Award COL ¶¶ 52, 60, 65, 66, 72.) The Arbitrator also found that Lim contributed to the dentists' infringement because he sold a product that was material to performing the method of claim 1 of the '890 patent (and that product had no non-infringing use) and because Lim knew that the product was made for infringing the '890 patent. (*See* Final Award COL ¶¶ 79, 81–82.)

For Lim's acts of indirect infringement, the Arbitrator awarded Golden and Beak & Bumper $525,948. (Final Award at 68.) This award is based on three subsidiary findings. The Arbitrator first concluded that the $10,000 liquidated damages provision of the Settlement Agreement was an unreasonable award for patent infringement. (Final Award COL ¶¶ 94–96.) Next, the Arbitrator accepted Petitioners' expert's calculation of a reasonable royalty of

$175,316. (*See id.* ¶ 100.) Third, the Arbitrator found that Lim had willfully infringed the '890 patent and so she trebled the $175,316 amount to $525,948. (*Id.* ¶¶ 103–04.)

In supporting her finding of willful infringement, the Arbitrator noted that Lim knew that the dentists who were using the Power Elevators were practicing the method claimed by the '890 patent. (Final Award COL ¶ 111.) She also found that Lim could not reasonably believe that the '890 patent was invalid. (*See id.* ¶¶ 111–12, 117, 154, 157.) The Arbitrator also concluded that there was "significant and competent evidence that Mr. Lim deliberately copied the Golden Organization's ideas and designs" in creating the Power Elevators. (*Id.* ¶ 143.)

Based on her finding that Lim willfully infringed the '890 patent, the Arbitrator deemed the case to be "exceptional" and thus eligible for fee shifting. (Final Award ¶ 196.) As the prevailing parties, the Arbitrator awarded Golden and Beak & Bumper $661,383.59 in attorney's fees. (Final Award at 69.)

Finally, the Arbitrator entered a permanent injunction preventing Lim (and all those in privity with him) from making or selling "Power Elevator[s] as currently configured" and from selling "any of the counterfeit Physics Forceps instruments that Claimants or Golden have returned to [Lim]." (Final Award at 69.)

In all then, the Arbitrator awarded Golden and Beak & Bumper $1,264,746 and a permanent injunction.

### E.

On March 20, 2015, Golden and Beak & Bumper filed this lawsuit to confirm the Arbitrator's Partial Final Award. (Dkt 1; *see also* Dkts. 28, 48.) At that time, this case was assigned to United States District Judge Patrick Duggan.

About two weeks later, Petitioners sought a temporary restraining order and a preliminary injunction, asserting that despite the Arbitrator's permanent injunction, Lim had been selling infringing goods at dental trade shows. (*See* Dkt. 3, Mot. for TRO at 5–6.) In Judge Duggan's absence, this Court was tasked with ruling on the request for a temporary restraining order. (*See generally* Dkt. 10, Order Granting TRO.) Consistent with the Arbitrator's award, this Court enjoined Lim from selling Power Elevators or the rejected Physics Forceps. (Order Granting TRO at 3; Dkt. 15, TRO Hr'g Tr.) To protect Lim's interests, however, Petitioners were required to post a $20,000 bond. (*See* Order Granting TRO at 3.) This Court did not rule on Petitioners' request for a preliminary injunction as this case remained Judge Duggan's.

On the same day Petitioners sought a temporary restraining order, March 20, 2015, Lim petitioned the United States Patent and Trademark Office to reexamine the '890 patent. *See* U.S. Patent Reexamination Control No. 90/013,471 (filed Mar. 27, 2015), *available at* http://portal.uspto.gov/pair/PublicPair. Since then, the USPTO has preliminary determined that all claims of the '890 patent are not novel or are obvious and thus unpatentable. *See* U.S. Patent Reexamination Control No. 90/013,471, Non-Final Office Action (filed July 27, 2015).

In October 2015, this case was reassigned to this Court due to Judge Duggan's retirement. The motion for preliminary injunction, among others, remained pending. Judge Duggan had, however, extended the temporary restraining order "until the Court is able to resolve all the pending motions in this action." (*See* Dkt. 35 at 3–4.) As fifteen briefs had been filed on the issue of whether to confirm, vacate, or modify the Arbitrator's award, the Court ordered Golden and Beak & Bumper and Lim to file consolidated motions to confirm and vacate, respectively. (Dkt. 47, Order Setting Briefing Procedures.) The parties complied, and those motions are now before the Court for resolution. (Dkt. 48, Consolidated Mot. to Confirm; Dkt.

10

49, Consolidated Mot. to Vacate.) The prior motions, however, were not withdrawn and so those too are before the Court.

Additionally, prior to reassignment, Lim had filed an emergency motion to lift the TRO and stay this case until the USPTO's reexamination of the '890 patent is complete. (*See* Dkt. 30, Mot. to Lift TRO and to Stay.) That too is now before the Court to be resolved.

## II.

The Court begins with Lim's request to stay this case. Lim argues that if the USPTO ultimately invalidates the '890 patent, Golden and Beak & Bumper will not be entitled to have the Arbitrator's award confirmed: "It is simply impossible to infringe an invalid patent." (Dkt. 34, Reply re Mot. to Lift TRO and to Stay at 3; *see also* Dkt. 30, Mot. to Lift TRO and to Stay at 13.) Lim thus urges the Court to wait for the USPTO's decision before determining whether to confirm the Arbitrator's award. (Mot. to Lift TRO and to Stay at 11–12.)

The decision to stay a case while the USPTO reexamines a patent-in-suit is committed to the sound discretion of the district court. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir.) on reh'g, 771 F.2d 480 (Fed. Cir. 1985). The following non-exclusive list of factors help a court exercise its discretion: "'(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Equipements de Transformation IMAC v. Anheuser-Busch Companies, Inc.*, 559 F. Supp. 2d 809, 815 (E.D. Mich. 2008) (internal quotation marks omitted) (collecting cases).

Staying this case is not the proper course. For one, Lim's motion comes very late in the game: the parties have completed discovery, engaged in extensive motion practice, and, most

significantly, the equivalent of a trial has been held. True, the Arbitrator's award has not yet been confirmed. But that does not change the fact that significant resources have been spent bringing this case to near finality. The timing of Lim's motion thus does not favor a stay. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2007 WL 1655625, at *3 (N.D. Cal. June 7, 2007) ("Fresenius's argument runs counter to the clear rule developed in cases considering stays that, where, as here, discovery has commenced, claim construction has been briefed, and dispositive motions have been filed and disposed of, courts should not grant stays for reexamination before the PTO.").

Lim also knew of each prior art reference that formed the basis of his petition for reexamination by April 2014. (*See* Dkt. 32, Resp. to Mot. to Lift TRO and to Stay Exs. P, N.) This was well before the start of the arbitration hearing. (Dkt. 52, Arbitration Hr'g Tr. at 1.) Yet Lim did not seek reexamination at that time. Instead, he took his chances before the Arbitrator, citing to her some (if not all) of the references he would later put before the USPTO. He lost. It hardly seems fair to Petitioners to now stay this case while Lim takes a second bite at the apple. *See Orion IP, LLC v. Mercedes-Benz USA*, LLC, No. 6:05 CV 322, 2008 WL 5378040, at *8 (E.D. Tex. Dec. 22, 2008) ("Staying the case now would allow Hyundai to benefit from a second bite at invalidity, even though Hyundai had ample opportunity to present its invalidity case at trial."), *vacated on other grounds by Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967 (Fed. Cir. 2010).

Further, it is far from clear that staying this case will simplify matters before this Court. Even though the USPTO has rejected claim 1 of the '890 patent, it has designated that determination as non-final. And the USPTO has not ruled on the validity of that claim following Golden's response to the preliminary rejection. Moreover, even if the USPTO ultimately rejects

claim 1, Golden can appeal to the Patent Trial and Appeal Board, and if that tribunal affirms the rejection, to the Federal Circuit Court of Appeals. *See* 35 U.S.C. §§ 134(b), 141. Thus, not only is it speculation at this point to say that claim 1 will be rejected, but it could take years for reexamination to become final, and during this time, Golden and Beak & Bumper will be deprived of over $500,000 in patent damages and a permanent injunction. *See Orion*, 2008 WL 5378040, at *8.

On the other hand, should this Court confirm the Arbitrator's award only to have the USPTO later reject claim 1, Lim would be forced to try to unwind what this Court has done. Not only does this present certain procedural hurdles, but also Lim suggests that he may be irreparably harmed by a permanent injunction: "Plaintiffs will have been using their unwarranted monopoly to stomp out competition for more than a decade." (Dkt. 34, Reply to Resp. to Mot. to Lift TRO and to Stay at 4.)

Whatever prejudice Lim faces from this possibility is of his own doing. Lim could have sought reexamination at least by May 2014, and could have asked the Arbitrator to hold off on the hearing. He did not do so. As such, the Court gives little weight to the possibility that Lim might someday have to ask this Court to set aside its confirmation of the Arbitrator's award. *See Fresenius*, 2007 WL 1655625, at *6 ("Any irreparable harm that Fresenius will suffer will be of its own making, attempting, as it did, to 'game the system' by playing both fields simultaneously. Fresenius chose to litigate this case rather than request a stay when reexamination was sought, presumably believing its best bet was in this Court rather than the PTO.").

In all, Lim's request to stay comes too late to save litigation resources and, in terms of the equities between the parties, they tilt in favor of Golden and Beak & Bumper. The Court will proceed to determine whether the Arbitrator's award should be vacated or confirmed.

### III.

Of Lim's nineteen arguments for vacating the arbitrator's award most are premised on 9 U.S.C. § 10(a)(4). (*See generally* Dkt. 49, Consolidated Mot. to Vacate.) That subsection of the Federal Arbitration Act permits this Court to vacate an arbitration award where the arbitrators "exceeded their powers" or "so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Lim has asserted that some of his arguments fall under the "exceeded their powers" prong of § 10(a)(4), while others fall under the "mutual, final, and definite" prong. (*See* Dkt. 41, Renewed Mot. to Vacate at 4, 16–17.) Lim also argues that the Arbitrator's award must be vacated because she failed to comply with § 294 of the Patent Act. (*See* Consolidated Mot. to Vacate at 25–32.) Lim further says that the Arbitrator made a host of erroneous and unfair evidentiary rulings that justify vacatur. (Consolidated Mot. to Vacate at 16–20, 25–28.)

The Court addresses these four categories of alleged error in turn.

### A.

Although Lim argues that the Arbitrator "exceeded [her] powers" in eight ways (Renewed Mot. to Vacate at 4; *see also* Consolidated Mot. to Vacate at 3, 4–9, 13–16, 20–22, 23–25), he overlooks an important point of law: an arbitrator can "exceed[] [her] powers" under § 10(a)(4) "either by misconstruing a contract provision in a dispute that was properly before [her], or by engaging in an inquiry that was not properly arbitrable." *See Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 477 (6th Cir. 2006). Lim does not specify which of his

14

eight arguments show that the Arbitrator exceeded her powers because she misapplied the Settlement Agreement and which show that she exceeded her powers because she decided an issue that the parties did not agree to arbitrate.

The distinction matters because this Court's review is markedly different depending on whether the question is one of arbitrability or misapplication of the contract. The first question—arbitrability—is typically one for the court without much deference to an arbitrator's take on the issue. *See Town & Country Salida, Inc. v. Dealer Computer Servs., Inc.*, 521 F. App'x 470, 474 (6th Cir. 2013) ("Where arbitrators allegedly 'exceeded their powers,' 9 U.S.C. § 10(a)(4) . . . due to the absence of a party's consent, courts need not defer to the arbitrators, because if a party did not agree to arbitration, the arbitrators have no authority to issue an award."). In contrast, where an arbitrator is accused of misconstruing or misapplying the contract, "courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed." *Solvay Pharm.*, 442 F.3d at 476 (internal citation and quotation marks omitted). So, under this second standard, "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority, that a court is convinced [s]he committed serious error does not suffice to overturn [her] decision.'" *Michigan Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 752 (6th Cir. 2007) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

In reviewing the eight ways in which Lim claims the Arbitrator exceeded her authority under § 10(a)(4), the Court believes that only one involves a question of arbitrability: Lim's claim that the Arbitrator ruled on issues related to patent infringement that the parties did not agree to arbitrate. This means that the Court's ability to review the other seven claims is

15

extremely limited: "serious error" will not suffice to vacate the Arbitrator's award so long as she was arguably applying the Settlement Agreement. *See Michigan Family*, 475 F.3d at 752.

The Court starts with Lim's claim that the Arbitrator exceeded her authority in deciding certain patent-infringement questions.

### 1.

Lim claims that, under the Settlement Agreement, "the parties agreed only to arbitrate whether the contract had been breached, not the separate questions related to patent infringement." (*See* Consolidated Mot. to Vacate at 3.) Lim partly backs down from this position, however: "the Arbitrator would, of course, need to determine certain questions related to infringement in determining whether the contract had been breached." (*Id.*) Thus, the Court understands Lim's argument to reduce to this: the parties did not agree to arbitrate remedies for patent infringement, including the issues of treble damages for willful infringement and attorney's fees for exceptional patent cases. (*See* Consolidated Mot. to Vacate at 2–3.)

Lim has failed to show that the parties did not agree to arbitrate the appropriate remedies for patent infringement. Paragraph 7 of the Settlement Agreement states that "Lim agrees not to infringe the GOLDEN PATENTS in the future." And in the broadly worded Paragraph 11, the parties agreed to arbitrate "[a]ny and all disputes regarding" the Settlement Agreement. Where an arbitration clause is broadly worded, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) (internal quotation marks omitted). Here there is an express agreement to arbitrate patent infringement and no express exclusion for infringement remedies. Nor is there any "forceful evidence of a purpose to exclude" infringement remedies from arbitration. To the

16

contrary, why would the parties think arbitration a good forum for determining only infringement and not damages for infringement? And why would the parties have thought it efficient to contest infringement in one forum to only have to turn around and contest whether that infringement was willful in another?

The Court thus concludes that the parties agreed to arbitrate the issues of patent infringement and remedies for patent infringement. *See Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[A]ny doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

**2.**

Lim next claims that the Arbitrator exceeded her authority by reopening the arbitration hearing.

The Arbitrator closed the arbitration hearing on January 28, 2015. Then on February 26, 2015, she issued a "Partial Final Award," which, as noted, was partial only because the Arbitrator did not yet have an accounting of attorney's fees. (*See* Dkt. 1, Pet. to Confirm Ex. C, Partial Final Award ¶¶ 197–99.) The Arbitrator thus gave the parties time to brief the fee issue and reopened the hearing to permit Petitioners to submit evidence supporting their claim for fees. (*See id.*) On May 8, 2015, more than four months after the Arbitrator initially closed the hearing, she issued her Final Award, which included an accounting of attorney's fees.

In arguing that the Arbitrator exceeded her authority by reopening the hearing, Lim points out that Rule 45 of the American Arbitration Association's Commercial Arbitration Rules states that "[t]he award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the

17

hearing." Thus, says Lim, the Arbitrator had only until February 27, 2015 to issue her award. Lim recognizes that Rule 40 permits arbitrators to reopen hearings, but he maintains that Rule 40 permits an arbitrator to reopen a hearing only when "it would not prevent the making of the award within the deadline" or "with the agreement of the parties." (Consolidated Mot. to Vacate at 24.) Lim says the parties did not agree to reopen the hearing and that the Final Award was issued well after the 30-day deadline. Thus, Lim concludes, the Arbitrator exceeded her authority in reopening the hearing.

Lim misreads AAA Commercial Arbitration Rule 40. It does not say that an arbitrator can reopen the hearing only if doing so does not preclude her from meeting the 30-day deadline set out in Rule 36. (Consolidated Mot. to Vacate Ex. Z, AAA Comm. Arbitration R. 40.) Instead, it says that the "hearing may be reopened on the arbitrator's initiative" unless "reopening the hearing would prevent the making of the award within the specific time agreed to by the parties *in the arbitration agreement*." (AAA Comm. Arbitration R. 40 (emphasis added).) Here, the Settlement Agreement did not provide a time for an award. (*See generally* Settlement Agreement.) So the Arbitrator could reopen the hearing under Rule 40. Her only obligation was to issue an award within 30 days after she closed the hearing for a second time. (*See* AAA Comm. Arbitration R. 40.) Golden and Beak and Bumper say that she did exactly that, and Lim does not assert (let alone evidence) otherwise. (*Compare* Consolidated Mot. to Confirm at 20, *with* Consolidated Mot. to Vacate at 23–25.) As such, Lim has not shown that the Arbitrator exceeded her authority in reopening the arbitration hearing.

**3.**

Lim also asserts that the Arbitrator exceeded her powers by awarding Petitioners attorney's fees. This argument is three pronged.

18

Lim first faults the Arbitrator for awarding Golden and Beak & Bumper damages equal to the attorney's fees associated with dismissing two cases that Dental USA filed in the Northern District of Illinois. (Consolidated Mot. to Vacate at 5.) Lim says that this award exceeded the Arbitrator's authority because Michigan law prohibited the award of fees and, even if it did not, it was End Product Results—not Petitioners—that paid them.

Lim next says that the Arbitrator should not have awarded attorney's fees because those fees are premised on willful infringement and he did not willfully infringe. (Consolidated Mot. to Vacate at 6.) Lim's position is that he had a reasonable belief that the '890 patent was invalid. (*See id.*) Indeed, says Lim, the current status of the reexamination proceeding—all claims of the '890 patent have been rejected as anticipated or obvious—suggests that his "belief was not only reasonable, but accurate." (*Id.*)

Third, Lim argues that the Arbitrator exceeded her authority by awarding attorney's fees based on time Petitioners' counsel spent pursuing claims other than infringement of the '890 patent. (Consolidated Mot. to Vacate at 6.) Lim asserts that several time entries corresponded to work Petitioners' counsel performed in litigating Petitioners' design patents or breach-of-contract claims. (*Id.*) Lim also faults the Arbitrator for awarding fees based on hourly rates for "top trial attorneys" instead of some lower rate. (*Id.* at 7–8.)

As concluded above, the Court does not believe these arguments implicate arbitrability. Rather, they at most show that the Arbitrator committed legal or factual error in deciding an issue that the parties agreed to arbitrate—remedies for patent infringement. As such, the question for the Court is merely whether the Arbitrator was "even arguably construing or applying the" Settlement Agreement in awarding attorney's fees. *See Michigan Family*, 475 F.3d at 752.

She was. In the two Northern District of Illinois suits, Dental USA sought to invalidate Beak & Bumper's patents. Invalidity is a defense to infringement, and infringement is covered by the Settlement Agreement. (Settlement Agreement ¶ 7.) Thus, the Arbitrator was at least arguably enforcing the provisions of the Settlement Agreement requiring Lim and "all business controlled by Lim . . . specifically including[] . . . Dental USA" to arbitrate "[a]ny and all disputes regarding" the agreement. (*Id.* ¶¶ 8, 11.) As for the Arbitrator's determination that Lim did not have a good faith basis to believe that the '890 patent was invalid, the Arbitrator was at least arguably applying the provision of the Settlement Agreement prohibiting Lim from infringing—again, invalidity is a defense to infringement. (*See id.* ¶ 7.) Finally, what the Arbitrator included and excluded in her accounting of attorney's fees is quintessential fact finding. The same goes for what rate she thought was reasonable.

Given that Lim's attorney's fees arguments at most demonstrate legal or factual error, this Court has no basis to conclude that the Arbitrator's fee award exceeded her authority. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 1003 (9th Cir. 2003) ("The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4).").

### 4.

Lim next claims that the Arbitrator had no authority to award Petitioners $29,000 for the deposit that Golden gave Lim to manufacture of 500 sets of Physics Forceps. (Consolidated Mot. to Vacate at 13.) Lim points out that the refund was error because $17,000 of the $29,000 deposit

2:15-cv-10795-LJM-MKM   Doc # 53   Filed 02/10/16   Pg 21 of 37   Pg ID 7771

was not paid to him but instead to his manufacturer. (*Id.*) He also argues that the Settlement Agreement extinguished "any demand for return of [the] deposit." (*Id.* at 14.)

This argument fails for the same reasons that Lim's attorney's fees argument failed: Lim has not shown that the Arbitrator was not at least arguably applying the Settlement Agreement. Under the Settlement Agreement, Lim was to manufacture 500 sets of satisfactory Physics Forceps for $91,000 *less the $29,000 deposit*. (Settlement Agreement ¶ 3.) The Arbitrator found that Lim did not manufacture any Physics Forceps to Golden's satisfaction. Based on this finding she could have thought that, under the Settlement Agreement, Lim should not get any of the $91,000—including the $29,000 Golden had already paid. (*See* Settlement Agreement ¶ 3 ("Golden shall pay Lim the Sum of $180.00 per set (set of 4 pliers) for each set . . . acceptable by Golden.").) Even if erroneous, the Arbitrator was arguably applying the Settlement Agreement. And that is enough to conclude that the Arbitrator did not exceed her authority under § 10(a)(4).

## 5.

Lim further claims that the Arbitrator exceeded her powers when she allowed Petitioners to introduce testimony from another case. (Consolidated Mot. to Vacate at 14–16.) In particular, the Arbitrator allowed Golden and Beak & Bumper to admit excerpts from three depositions taken in a separate trademark-infringement case against Lim's company, Dental USA. (*See id.* 15.) Lim says that the parties explicitly agreed to three depositions and so, in admitting the deposition transcripts, "the Arbitrator ignored the parties' agreement" and thus exceeded her powers. (*Id.*)

The Court disagrees. It is true that the parties' arbitration discovery plan and the Arbitrator's discovery order limited depositions to three per side. (Consolidated Mot. to Vacate Ex. Q, May 22, 2012 Report of Prelim. Hr'g and Discovery Order at 1.) But the parties and

21

Arbitrator could have decided on this restriction to keep discovery costs down. The discovery order does not say that only three witnesses could testify at trial. Nor does it say that discovery taken in another case could not be used in the arbitration. The Arbitrator's admission of the depositions from the trademark-infringement case was thus arguably consistent with the parties' agreement, and that is reason enough not to vacate. *See e.g.*, *Solvay Pharm.*, 442 F.3d at 476.

As for Lim's conclusory argument that, in admitting the deposition transcripts, the Arbitrator deprived him of an opportunity to cross examine the deponents (Consolidated Mot. at 16), he has not shown that this denied him a fundamentally fair trial, *see Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002) ("Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing."). And the Court does not think that Lim can make such a showing given that Lim controls Dental USA (he is its president and sole shareholder), and Dental USA had an opportunity to cross examine the three witnesses in the trademark case.

**6.**

Lim claims that the Arbitrator exceeded her powers when she found a breach of paragraph 2 of the Settlement Agreement. (Consolidated Mot. to Vacate at 20–21.) That provision required Lim to manufacture 500 sets of dental pliers "in accordance with the specifications provided by GOLDEN and meeting quality standards dictated by GOLDEN." (Settlement Agreement ¶ 2.) Lim says that he was never paid for manufacturing these pliers, and so the manufacturing requirements of paragraph 2 were not triggered. (Consolidated Mot. to Vacate at 21.)

Whatever merit this argument has, it does not show that the Arbitrator was not applying the Settlement Agreement. It is true that Lim's manufacturing obligation under paragraph 2 of the Settlement Agreement was "contingent upon the payment provisions set forth in paragraph 3." (Settlement Agreement ¶ 2.) But "contingent upon the payment provisions set forth in paragraph 3" is not the same thing as "contingent upon payment." This is because paragraph 3 only required Golden to pay for pliers that he found "acceptable." (Settlement Agreement ¶ 3.) Thus, the Arbitrator arguably attempted to reconcile paragraphs 2 and 3 of the Settlement Agreement.

It follows that Lim's claim that the Arbitrator ignored a condition precedent in the Settlement Agreement does not warrant vacatur.

**7.**

Lim also asserts that "[w]hile the Arbitrator was arguably empowered to determine whether the liquidated damages clause [of the Settlement Agreement] was enforceable, she was not empowered to arbitrarily enforce and ignore the clause as she saw fit." (Consolidated Mot. to Vacate at 20.) In other words, Lim's position is that the liquidated damages clause was enforceable or it was not, and the Arbitrator lacked the power to say it was both. (*See id.*)

Lim is correct that the Arbitrator did not apply the liquidated damages clause in determining the damages Lim should pay for patent infringement but did apply that clause to other breaches of the Settlement Agreement (e.g., breaches of paragraphs 2 and 4). But the Arbitrator explained why she thought this was proper: (1) "where, as here, the relevant contract contains several distinct covenants subject to diverse potential breaches and a single sum in a liquidated damages clause, the liquidated damages clause [is] unenforceable as a penalty" and (2) "35 U.S.C. § 284 requires that damages awarded for patent infringement be adequate to

compensate for the infringement but in no event may be less than a reasonable royalty." (Final Award COL ¶ 96.) Right or wrong, these statements show that the Arbitrator's decision not to apply the liquidated damages clause for Lim's breach of paragraph 7 was based on her interpretation of the contract and the governing law. As such, the Arbitrator's application of the liquidated damages provision does not show that she exceeded her authority under § 10(a)(4).

**8.**

Lim also claims that the Arbitrator lacked "authority" to decide the patent-related issues submitted to arbitration because she was not a member of the American Arbitration Association's National Panel of Patent Arbitrators and, under the AAA's rules, a panel member is "to be selected whenever a party raises a patent claim." (Consolidated Mot. to Vacate at 4.)

This basis for vacatur has been forfeited. In April 2012, then counsel for Lim informed the AAA that "Dental USA has no objection to Ms. Barbara L. Mandell as the Arbitrator in this case." (Consolidated Mot. to Confirm Ex. 14, Apr. 13, 2011 Email from Grossman to AAA.) True, this was before the Arbitrator allowed Golden to amend his statement of claim to seek patent damages beyond $10,000. But in his initial arbitration demand filed in December 2011, Golden alleged that Lim had made, sold, or used "dental pliers which infringe[d] one or more of the Golden Patents." (Dkt. 48, Consolidated Mot. to Affirm Ex. 2, Demand for Arbitration ¶ 9.) Thus, Lim was aware from the outset of the arbitration that patent infringement (and, by implication, invalidity) would be resolved by arbitration. Lim nonetheless confirmed the selection of Mandell as arbitrator. Moreover, Lim does not claim that—at any point—he raised the possibility of selecting an arbitrator from the AAA's National Panel of Patent Arbitrators. Accordingly, the Court finds Lim's claim that the Arbitrator lacked authority to decide the patent-related issues submitted to arbitration to be forfeited. *See Brook v. Peak Int'l, Ltd.*, 294

F.3d 668, 673–74 (5th Cir. 2002); *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Elli*s, 849 F.2d 264, 269 (7th Cir. 1988).

* * *

In sum, Lim's claims that the Arbitrator exceeded her authority are for the most part claims of legal or factual error. But, where an issue has been submitted to arbitration, the fact that the arbitrator erred—even seriously—does not warrant vacatur so long as the arbitrator was arguably applying the contract. *See Michigan Family*, 475 F.3d at 752. Thus, Lim has not shown that the Arbitrator "exceeded [her] authority" within the first prong of § 10(a)(4).

## B.

Lim also invokes the second prong of § 10(a)(4): he claims that the Arbitrator's award must be vacated because she "so imperfectly executed [her powers] that a mutual, final, and definite award upon the subject matter submitted was not made," 9 U.S.C. § 10(a)(4). (*See* Dkt. 41, Renewed Mot. to Vacate at 16–19; *see also* Consolidated Mot. to Vacate at 9–13, 16, 22.) The Court disagrees.

## 1.

Although the argument is less than clear, Lim apparently believes that the Arbitrator's Final Award is not "definite" within the meaning of § 10(a)(4) because it fails to distinguish entities that were parties to the arbitration from those that were not. (*See* Renewed Mot. to Vacate at 16–18.) Lim complains of the Arbitrator's repeated use of the term "Golden Organization" to refer to five distinct entities, including Dr. Golden, Beak & Bumper, and End Product Results. (Renewed Mot. to Vacate at 17–18.) Lim points out that Golden and Beak & Bumper were the only parties to the arbitration yet the Arbitrator's award was based on harm to End Product Results. (*See id.*; Consolidated Mot. to Vacate at 10.) Relatedly, Lim points out that

25

while Petitioners invoked arbitration against "Jang H. Lim d/b/a Dental USA, Inc.," Dental USA is not his "doing business as" designation and was not a party to the arbitration. (Renewed Mot. to Vacate at 17–18; Consolidated Mot. to Vacate at 12–13.) In short, Lim says that the Arbitrator's award "improperly mix[es] parties and non-parties making it impossible to determine whether the Arbitrator . . . properly consider[ed] the effect on actual parties or improperly consider[ed] the effect on non-parties." (Renewed Mot. to Vacate at 18; *see also* Consolidated Mot. to Vacate at 10–11.)

An award is "final and definite" within the meaning of § 10(a)(4) where it "resolve[s] all the issues submitted to arbitration . . . definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998).

Even if the Arbitrator's award focused on harm to non-party End Product Results or was based on the conduct of non-party Dental USA, her Final Award makes clear to Lim what he is obligated to do. The Arbitrator identified "Respondent" as Lim ("Respondent Jang Ho Lim is the President of Dental USA, Inc." (Final Award FOF ¶ 9)) and then used the term "Respondent" in making her Final Award. In particular, she directed "Respondent" to pay Golden and Beak & Bumper $40,000 for breaching paragraphs 2 and 4 of the Settlement Agreement, $29,000 under paragraph 3, $8,414 for breaching paragraph 11, and $525,948 for willfully infringing the '890 patent. (Final Award at 68.) Additionally, she made clear that Lim is to pay Petitioners $661,383.59 in attorney's fees. (Final Award at 69.)[2] Finally, the Final Award enjoins

---

[2] In awarding attorneys' fees, the Arbitrator used the plural "Respondents." This can only reasonably be deemed a typo. And to the extent that this mistake, or Petitioners' use of "Jang H. Lim d/b/a Dental USA, Inc." causes any confusion about who the Arbitrator found liable, the Court would not vacate the Arbitrator's award but modify it to refer to "Lim." *See* 9 U.S.C. § 11(a), (c) (providing that a court may modify or correct an award "[w]here there was . . . an

"Respondent and all of those in privity with Respondent" from continuing to make or sell Power Elevators or selling counterfeit Physics Forceps. (*Id.*) Thus, each of the Arbitrator's directives clearly sets forth what Lim must do to comply with her award. That is enough to make her Final Award definite under § 10(a)(4). *See Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002) ("The purpose of [§ 10(a)(4)'s "mutual, final, and definite" requirement] is merely to render unenforceable an arbitration award that is either incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had) or so badly drafted that the party against whom the award runs doesn't know how to comply with it.").

Moreover, although the Arbitrator might have awarded damages based on harm to a non-party, this is not the same thing as, in Lim's words, "awarding damages *to* a non-party" (Consolidated Mot. to Vacate at 10 (emphasis added)). The Arbitrator did not award End Product Results anything. (*See* Final Award at 68–69.)

Similarly, although the Arbitrator's award was in part based on Dental USA's conduct, this is not the same thing as, in Lim's words, awarding "damages or relief *against* [Dental USA]." (Consolidated Mot. to Vacate at 13 (emphasis added).) As explained, each of the Arbitrator's monetary awards was against Lim. True, the Arbitrator did enjoin those "in privity" with Lim. But that language is standard permanent-injunction parlance. *See* Fed. R. Civ. P. 65(d)(2)(C). And, the Settlement Agreement bound "all business controlled by Lim or Golden specifically including, but not limited to Dental USA, Inc." Thus, the Arbitrator's permanent injunction did nothing more than enforce that provision.

---

evident material mistake in the description of any person, thing, or property referred to in the award" or "[w]here the award is imperfect in matter of form not affecting the merits of the controversy").

27

**2.**

Apparently grasping onto the term "final" in § 10(a)(4)'s "mutual, final, and definite" clause, Lim asserts that "[b]ecause the February 27 [Partial Final Award] was not a final award and no final award was issued before the deadline, the February 27 Award must be vacated." (Consolidated Mot. to Vacate at 22.)

Granting Lim that the February 27 award was not "final" under § 10(a)(4), he still has no way around the aptly-named "Final Award" issued on May 8, 2015. He argues that the May 8 award is not final because it is untimely. But the Court has already concluded that the Arbitrator could reopen the hearing and that Lim has not shown that she did not issue the Final Award within 30 days of closing the hearing for a second time.

* * *

In sum, Lim has not shown that the Arbitrator "so imperfectly executed [her powers] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Vacatur on this basis is not warranted.

**C.**

Lim also asserts that this Court should vacate the Arbitrator's award because she violated § 294(b) of the Patent Act. (*See* Dkt. 19, Mot. to Vacate at 20–22; Dkt. 49, Consolidated Mot. to Vacate at 29–33.) That statutory provision provides that, in arbitration proceedings, "the defenses provided for under section 282 shall be considered by the arbitrator if raised by any party to the proceeding." 35 U.S.C. § 294(b). Lim states that he raised a number of defenses listed in § 282, including invalidity and non-infringement, but the Arbitrator did not "consider" them in violation of § 294(b). (Mot. to Vacate at 21–22; Consolidated Mot. to Vacate at 29–30.) Thus, concludes Lim, her award must be vacated. (*See* Mot. to Vacate at 28.)

28

Lim's conclusion is questionable: § 294 does not say what happens if an arbitrator fails to comply with its demands. And the Federal Arbitration Act only provides four grounds for vacating an award, none of which involve an arbitrator's failure to follow the law. *See* 9 U.S.C. § 10(a). Although courts have held that an arbitration award may be vacated where an arbitrator "manifestly disregards the law," the continued existence of that non-statutory ground for vacatur is in doubt. *See Raymond James Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 64 (1st Cir. 2015); *Schafer v. Multiband Corp.*, 551 F. App'x 814, 818–19 & n.1 (6th Cir. 2014).

In any event, the Court finds that Lim has not established  that the Arbitrator did not "consider" his several defenses to infringement as required by § 294. Lim faults the Arbitrator for giving "no opinion regarding what was or was not taught by the prior art." (Consolidated Mot. to Vacate at 30.) But just because the Arbitrator did not explain in detail why the methods of the '890 patent were novel and non-obvious over the prior art does not mean that the Arbitrator did not "consider" Lim's invalidity defense. The Final Award discusses invalidity several times. (Final Award FOF ¶¶ 152–57; Final Award COL ¶¶ 74–75, 117–19, 157.) In fact, the Arbitrator explicitly stated that she was "satisfied that none of the alleged prior art is relevant or teaches or discloses the novel method in Claim 1 of the '890 patent." (Final Award COL ¶ 119.) Moreover, it is clear that invalidity was at the heart of Lim's cross examination of Petitioners' principal witness, Dr. Kosinski, and that the Arbitrator was thoughtfully engaged during that examination. (Arbitration Hr'g Tr. at 451–524, 781–83, 788–804, 846–865, 1268–86.) In short, although the Arbitrator's explanation of her invalidity ruling is brief, it is apparent she "consider[ed]" that defense. Section 294 demands no more.

Lim similarly argues that in finding infringement, the Arbitrator did not perform an element-by-element analysis, i.e., she did not find that dentists using Power Elevators perform

each step of claim 1 of the '890 patent. This argument misses the mark. It at most shows that the Arbitrator's infringement analysis was in error, not that she failed to "consider" infringement. And even a cursory review of her Final Award reveals that infringement was a central issue before the Arbitrator. (*See e.g.*, Final Award ¶¶ 37–89, 111, 142–50.)

The Court is also not persuaded by Lim's argument that the Arbitrator did not "consider" his defense of indefiniteness. (Consolidated Mot. to Vacate at 31–32.) Lim says that, in construing claim 1, the Arbitrator relied on an indefiniteness standard that was overruled by the Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.*, — U.S. —, 134 S. Ct. 2120, 189 L. Ed. 2d 37 (2014), and that, when he pointed this out to her, she refused to revise her claim construction. (*Id.* at 32.) This is true. (*See* Consolidated Mot. to Vacate Ex. EE, Arbitrator's Resp. to Mot. for Reconsideration at 1.) But again, even if the Arbitrator used the wrong legal standard, that would at most show that the Arbitrator erred in ruling on Lim's claim of indefiniteness—not that she did not "consider" the defense.

And if Lim's real gripe is that the Arbitrator ignored *Nautilus*, that too fails. In addressing Lim's motion for reconsideration, the Arbitrator ruled that, with one exception, that case did not affect her claim construction ruling. (Arbitrator's Resp. to Mot. for Reconsideration at 1.) And regarding that one possible basis for altering her claim construction, the Arbitrator gave Lim the opportunity to develop it at the hearing. (Arbitrator's Resp. to Mot. for Reconsideration at 2.) Petitioners say that Lim never did so and Lim does not assert (let alone evidence) that he did. (*Compare* Consolidated Mot. to Confirm at 24, *with* Consolidated Mot. to Vacate at 31–32.) As such, the Court finds that the Arbitrator's treatment of *Nautilus* is no basis to vacate her award.

* * *

In sum, Lim is correct that the Arbitrator's non-infringement and invalidity analysis could have been more detailed. But § 294(b) is not a writing requirement—it only demands that an arbitrator "consider" certain defenses to patent infringement. Because the Arbitrator did so, vacatur based on § 294(b) is not warranted.

## D.

Lim further asserts that this Court should vacate the Arbitrator's award because she made a number of erroneous and unfair evidentiary rulings. This ground for vacatur comes in two forms. Neither persuade.

## 1.

Lim argues that the Arbitrator's award should be vacated because she wrongly excluded testimony from his expert, Timothy Hicks. (*See* Consolidated Mot. to Vacate at 27.) Although echoing the "exceeds their authority" language of 9 U.S.C. § 10(a)(4), the essence of Lim's claim is that the Arbitrator improperly excluded evidence that supported his case (i.e., expert testimony regarding non-infringement). (*See* Consolidated Mot. to Vacate at 27 (asserting that the Arbitrator "refused to hear competent evidence that was material to the claims and defenses presented").) As such, the proper question to ask when resolving this claim is whether, in limiting Hick's testimony, the Arbitrator deprived Lim of a fundamentally fair proceeding. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002) ("Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing."); *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 531 (4th Cir. 2007) ("[A] federal court is entitled to vacate an arbitration award only if the arbitrator's refusal

to hear pertinent and material evidence deprives a party to the proceeding of a fundamentally fair hearing."); *cf.* 9 U.S.C. § 10(a)(3) (providing that an arbitrator's decision not to admit evidence must rise to the level of misconduct to warrant vacatur).

The Arbitrator did not deprive Lim of a fundamentally fair proceeding in circumscribing the topics upon which Hicks could opine. Hicks was allowed to testify that applying force with Power Elevators is similar to turning a screwdriver (there is no change in "pitch") while applying force with Physics Forceps is similar to using a hammer to pull out a nail (the rotation results in a change in "pitch"). (Arbitration Hr'g Tr. at 1401–03, 1408.) Moreover, the differences in rotation were thoroughly explained by Lim in his post-hearing brief. (Dkt. 48, Consolidated Mot. to Confirm Ex. 11, Respondent's Post-Hearing Br. at 17–21.) As such, the essence of Hicks' testimony was put before the Arbitrator for consideration and any restrictions the Arbitrator placed on Hicks' testimony did not deprive Lim of a fundamentally fair proceeding. (And, for the same reason, the Court does not find merit in Lim's claim that, by excluding Hicks, the Arbitrator deprived Lim of the opportunity to argue a reverse-doctrine-of-equivalents defense to infringement. (*See* Consolidated Mot. to Vacate at 28–29.))

### 2.

Lim also claims that the Arbitrator "employed differing standards of evidence for [him] and [Petitioners]." (Consolidated Mot. to Vacate at 16 (capitalization altered).) For example, Lim asserts that the Arbitrator prevented him from introducing evidence that would have impeached Petitioners' expert (the expert's felony conviction for tax fraud and his business connections to Petitioners). (Consolidated Mot. to Vacate at 18.) Lim also says that the Arbitrator prevented him from introducing a non-infringement letter which would have helped him show that he did not willfully infringe. (*Id.*) And, says Lim, the Arbitrator "ignored material evidence in many

32

instances," including testimony that Petitioners did not know whether any dentists ever relied on Lim's statements. (*Id.*) In contrast, says Lim, the Arbitrator allowed Petitioners to admit "a plethora of incompetent and prejudicial evidence." (*Id.*) As examples, Lim says that the Arbitrator allowed Petitioners to admit (1) testimony that was not based on personal knowledge, (2) the transcripts from the trademark infringement case, and (3) evidence of damages to a non-party, End Product Results. (*Id.* at 19.) In short, Lim claims that "[t]ime-after-time" he was "subjected to a stringent reading of the Federal Rules of Evidence" while Golden and Beak & Bumper "were subjected to the AAA's guidelines noting that strict rules of evidence need not be followed." (*Id.*)

Disagreement with the Arbitrator's evidentiary rulings is not a basis for vacatur, nor has Lim demonstrated that the Arbitrator deprived him of a fundamentally fair trial. For one, Lim fails to place the evidentiary rulings in context. While Lim highlights evidence he was not permitted to admit, he says nothing about what he was permitted to admit. Likewise, while Lim complains that Petitioners were allowed to present evidence that should have been excluded, Lim makes no mention of evidentiary rulings adverse to Petitioners. Second, and more importantly, Lim fails to explain *why* the Arbitrator's evidentiary rulings were wrong. For example, Lim does not say how excluding Dr. Kosinki's tax-fraud conviction was error. Simply because this ruling was adverse to Lim does not mean it was wrong or unfair.

To the extent Lim implies that the Arbitrator was biased in favor of Petitioners, citing adverse evidentiary rulings falls far short of meeting the standard for vacatur. *See Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985) ("Even repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation."); *see also Nationwide Mut. Ins. Co. v. Home Ins.*

33

*Co.*, 278 F.3d 621, 626 (6th Cir. 2002) ("[T]he party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." (internal citation and quotation marks omitted)).

* * *

In short, Lim has not shown that the Arbitrator's evidentiary rulings warrant vacating her award.

**IV.**

Lim says that if the award is not vacated it must be modified. His three arguments do not persuade.

Referring again to the Arbitrator's treatment of Dental USA and End Product Results, Lim says, "To the extent not vacated due to an inability to determine whether liability or damages were directed to non-parties, the [Partial Final and Final] Awards must be modified to remove any discernable liability directed toward or damages awarded to non-parties." (Consolidated Mot. to Vacate at 34.) The Court has addressed this argument: the Arbitrator awarded nothing to End Product Results nor did the Arbitrator require Dental USA to pay anything. Thus, there is no "discernable liability directed toward or damages awarded to non-parties."

Lim also seeks a modification of the Arbitrator's award because she miscalculated patent-infringement damages (or, more precisely, she erred in adopting Petitioners' expert's erroneous damages calculation). (Consolidated Mot. to Vacate at 34–35.) Lim asserts that the law required the Arbitrator to determine a reasonable royalty using the number of "challenged sales" not the number of "lost sales." (*Id.* at 35.) In other words, Lim says that while the Arbitrator said she was awarding a reasonable royalty for patent infringement, she in fact awarded lost profits. (*Id.*)

34

In making this argument, Lim asserts "mathematical error" and thus (apparently) invokes § 11(a) and its "evident material miscalculation of figures" language.

Lim stretches that language too far. The "evident material miscalculation of figures" clause of § 11(a) does not permit the Court to correct the Arbitrator's misunderstanding of the law (confusing a reasonable royalty with lost profits). It instead permits the Court to correct computational error that appears on the face of the award. *See Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378-79 (6th Cir. 2008) ("By its terms, 'an evident . . . miscalculation of figures' concerns a computational error in determining the total amount of an award—what the Fourth Circuit calls a 'mathematical error appear[ing] on the face of the award.'" (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998))). Lim's attempt to mask alleged legal error as mathematical error does not render § 11(a) applicable.

Lim next complains that Petitioners' Second Amended Statement of Claim did not ask for a permanent injunction, but the Arbitrator still awarded Petitioners one. (*Id.*) Lim says that by doing so, she "awarded upon a matter not submitted to [her]," 9 U.S.C. § 11(b). (Consolidated Mot. to Vacate at 16.)

The Court disagrees. As explained in the context of addressing Lim's related claim that the Arbitrator exceeded her authority under § 10(a)(4), given the broad "[a]ny and all disputes" language of the arbitration clause, the issue of remedies for patent infringement was submitted to arbitration. Moreover, although Lim is correct that Petitioners' Second Amended Statement of Claim did not specifically ask for a permanent injunction, Lim overlooks its request for "other and further relief as is just and appropriate." (Dkt. 48, Consolidated Mot. to Confirm Ex. 3, 2d Am. Stmt. of Claim at 11.) That catch-all is reasonably construed as asking for a permanent

35

injunction given that (1) the Settlement Agreement prohibited Lim from infringing "in the future" (Settlement Agreement ¶ 7), (2) Petitioners asked for a permanent injunction in their original arbitration demand (Consolidated Mot. to Confirm Ex. 2), and (3) Petitioners again requested a permanent injunction in a post-hearing brief (Consolidated Mot. to Confirm Ex. 20, Clmt.'s Post-Hr'g Br. at 21). (And Lim responded on the merits. (Consolidated Mot. to Confirm Ex. 21, Resp. to Clmt.'s Post-Hr'g Br at 1–6.)) In all, the Court finds that the question of whether Lim should be permanently enjoined from infringing the '890 patent was "submitted" to the Arbitrator as that term is used in § 11(b). *Cf. Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 478 (6th Cir. 2006) ("Courts . . . review questions of arbitrability de novo, but with a thumb on the scale in favor of arbitration.").

### V.

For the reasons provided, the Court HEREBY CONFIRMS the Arbitrator's May 8, 2015 Final Award (Dkt. 48, Ex. 1). Petitioners Dr. Richard Golden and Beak & Bumper, LLC's Omnibus Petition to Confirm (Dkt. 48) is GRANTED and Respondent Jang H. Lim's Cumulative Motion to Vacate (Dkt. 49) is DENIED. It follows that Lim's Motion to Vacate (Dkt. 19) and Renewed Motion to Vacate (Dkt. 41) are DENIED and Petitioners' Supplemental Petition to Confirm (Dkt. 28) is GRANTED. Lim's Motion for Leave to File a Supplemental Brief in Support of Motion to Vacate (Dkt. 23) is DENIED AS MOOT (*see* Dkt. 47). As this case is resolved, Petitioners' motion for a preliminary injunction (Dkt. 3) is DENIED AS MOOT.

Lim's Motion to Lift the Injunction and to Stay Case (Dkt. 30) is DENIED. (The Court addressed Lim's request for a stay in this opinion and the request to lift the TRO is moot given that Judge Duggan extended the restraining order only until all motions were resolved.)

Petitioners' Motion for Leave to File Sur-Reply to Defendant's Motion to Lift Injunction and Stay Case (Dkt. 36) is DENIED AS MOOT.

As this opinion and order entirely resolves this case, a separate judgment will follow.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  February 10, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 10, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson